Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
07/31/2026 08:20 AM CDT

BIG IRON AUCTION COMPANY, A NEBRASKA CORPORATION,
APPELLEE, v. HARDER CAPITAL, LLC, A NEBRASKA
LIMITED LIABILITY COMPANY, AND RYAN M. HARDER,
AN INDIVIDUAL, APPELLANTS.

___ N.W.3d ___

Filed July 31, 2026.    No. S-25-429.

1. **Injunction: Equity.** An action for injunction sounds in equity.
2. **Equity: Appeal and Error.** On appeal from an equity action, an appellate court decides factual questions de novo on the record.
3. **Jurisdiction: Appeal and Error.** The question of appellate jurisdiction is a question of law.
4. **Judgments: Appeal and Error.** An appellate court reviews questions of law independently of the lower court's conclusion.
5. **Jurisdiction: Appeal and Error.** Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it.
6. **Injunction: Damages.** In the absence of any statute authorizing the court to assess damages in the injunction suit, upon the dissolution of the injunction, the court has no authority to do so; the party aggrieved must resort to an independent action upon the bond.
7. **Jurisdiction.** Parties cannot confer subject matter jurisdiction upon a judicial tribunal by either acquiescence or consent, nor may subject matter jurisdiction be created by waiver, estoppel, consent, or conduct of the parties.
8. **Jurisdiction: Appeal and Error.** If the court from which a party appeals lacked jurisdiction, then the appellate court acquires no jurisdiction.
9. **Jurisdiction.** Subject matter jurisdiction refers to the power of a tribunal to hear and determine a case in the general class or category to which the proceedings in question belong and to deal with the general subject matter involved.

10. **Constitutional Law: Courts: Jurisdiction.** Both chancery and common law jurisdiction are conferred upon the district court by the Nebraska Constitution.

11. **Courts: Jurisdiction: Legislature: Appeal and Error.** The Legislature has provided the district court with general, original, and appellate jurisdiction in all matters, both civil and criminal, except where otherwise provided.

12. **Appeal and Error.** An appellate court will not consider an issue on appeal that was not presented to or passed upon by the trial court.

13. ____. In the absence of plain error, an appellate court considers only claimed errors which are both assigned and discussed.

14. **Arbitration and Award.** Courts are obliged to enforce the parties' agreement to arbitrate according to its terms.

15. ____. An arbitrator's power derives from the parties' agreement.

16. **Arbitration and Award: Federal Acts.** After an arbitral award has issued, a court having jurisdiction may confirm, vacate, or modify such an award under 9 U.S.C. § 9, § 10, or § 11 (Reissue 2018) of the Federal Arbitration Act.

17. **Actions: Appeal and Error.** When it applies, the law-of-the-case doctrine operates to preclude reconsideration of substantially similar, if not identical, issues at successive stages of the same suit or prosecution.

18. **Arbitration and Award.** The purpose of arbitration is the quick resolution of disputes and the avoidance of the expense and delay associated with litigation. In serving that purpose, a court gives strong deference to the arbitrator because when parties agree to arbitration, they agree to accept whatever reasonable uncertainties might arise from the process.

19. **Injunction: Damages.** Damages for the wrongful obtaining and issuance of an injunction or restraining order are confined to just and adequate compensation for the actual loss which is the natural and proximate result of the restraint imposed.

20. **Injunction: Damages: Attorney Fees.** The necessary and reasonable expenses for attorney fees expended or incurred in resisting or procuring the dissolution of an order of injunction wrongfully issued are recoverable as an element of damages, but, when the right to an injunction is not the main issue of the case, such damages are limited to the expenses incurred in securing the dissolution of the injunction, as distinguished from the expenses incurred in the trial of the principal issues involved.

21. ____: ____: ____. It is only where a trial of the principal issues involved is necessary to dispose of an injunction that attorney fees for

the trial of the case are proper to be allowed as damages caused by an injunction wrongfully issued.

22. ____: ____: ____. A recovery of attorney fees for the trial of a case cannot be allowed as an element of damages for an injunction wrongfully obtained, if the injunction proceedings be only auxiliary to the main case.

Appeal from the District Court for Hall County: ANDREW C. BUTLER, Judge. Affirmed as modified.

Jared J. Krejci, of Smith, Johnson, Allen, Connick & Hansen, for appellants.

Justin D. Eichmann and Keith A. Harvat, of Houghton Bradford Whitted, P.C., L.L.O., and Jeffrey C. Jarecki, of Jarecki Sharp & Petersen, P.C., L.L.O., for appellee.

FUNKE, C.J., CASSEL, STACY, PAPIK, FREUDENBERG, BERGEVIN, and VAUGHN, JJ.

CASSEL, J.

## INTRODUCTION

This appeal presents a novel intersection between arbitration and long-established law governing damages for an improperly granted injunction. In this complicated civil action partially referred to arbitration, an auction service company's former agent appeals from an order overruling a motion for damages, including attorney fees and expenses, under the injunction undertaking statute.[1] We first address jurisdiction and settle the standard of review. We then reach the key dispute: whether the arbitral award effectively dictated the outcome of the agent's motion, as the district court concluded. Because it did regarding all damages except attorney fees and expenses, we affirm the court's order as modified.

---

[1] See Neb. Rev. Stat. § 25-1067 (Reissue 2016).

## BACKGROUND

### Parties' Relationship and Agreement

Big Iron Auction Company (Big Iron) provides auction services. Between 2009 and 2023, Big Iron engaged Harder Capital, LLC, and Ryan M. Harder (collectively Harder) as an independent sales representative (ISR). As an ISR, Harder represented Big Iron's brand services and products in exchange for commissions earned on auction sales arranged by Harder on Big Iron's online auction platform.

The parties defined their relationship in writing. The operative ISR agreement contained two sections bearing on this case.

One section—paragraph 11—set forth restrictive covenants, including a noncompete clause. The clause prohibited the ISR from soliciting the business of any of Big Iron's customers and from being a sales representative for a competitor for 2 years following termination of the agreement.

The other key section—paragraph 16—addressed dispute resolution. It stated that the parties agreed to arbitrate their claims and that the Federal Arbitration Act would govern the proceedings. It conferred upon the arbitrator "exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability[,] or formation" of the ISR agreement.

The dispute resolution section also addressed the scope of the matter to be arbitrated, including three rather long sentences from which we capture pertinent language.

The first sentence spoke broadly. It stated that the parties "mutually consent to the resolution by arbitration of all claims or controversies ('claims'), past, present or future, whether or not arising out of the [ISR] agreement (or its termination), that [Big Iron] may have against [Harder] or that [Harder] may have against [Big Iron]."

The other two narrowed the scope. One stated, "The only claims that are arbitral are those that, in the absence of this Agreement, would have been eligible for court action under

applicable state or federal law." Then, in a sentence specifying claims "not covered," the other one excluded "claims by [Big Iron] or by [Harder] for temporary or permanent restraining orders or preliminary or permanent injunctions ('equitable relief') in cases in which such equitable relief would be otherwise authorized by law and any relief by [Big Iron] for claims related to claims under paragraph[] 11."

In October 2023, Harder terminated engagement as an ISR for Big Iron. Harder began selling auction services using a different online platform in apparent violation of the restrictive covenants in the ISR agreement.

### COMPLAINT, MOTION TO COMPEL ARBITRATION, AND TEMPORARY INJUNCTION

Big Iron filed a complaint against Harder in district court. It set forth causes of action for breach of contract, injunctive relief, and tortious interference. Big Iron requested an injunction prohibiting Harder from interfering with Big Iron's employee and customer relationships.

Harder moved to compel arbitration regarding the counts alleging breach of contract and tortious interference. The court held a hearing, where a question arose.

The court asked how paragraph 16's provisions—one giving the arbitrator exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability, or formation of the agreement—could be reconciled with the exclusion language relating to paragraph 11. Big Iron's counsel stated, "[T]here isn't any question the equitable relief issue is an issue for this Court to decide today" and that whether to send "the other legal remedies to an arbitrator for determination, I will leave that to the discretion of the Court." The court stated that it was ruling on the temporary injunction and that the issue "is specifically carved out not for an arbitrator."

The court entered an order sustaining in part the motion to compel arbitration. The court's order required the parties to "submit each of their claims and defenses, other than

[Big Iron's] claim for injunctive relief, to arbitration pursuant to the terms and conditions found in paragraph 16" of the ISR agreement. The order also specified that the arbitration would include "'any dispute relating to the interpretation, applicability, enforceability[,] or formation of [the ISR Agreement], including but not limited to any claim that all or any part of [such] Agreement is void or voidable.'"

The court also sustained in part Big Iron's motion for a temporary injunction. It precluded Harder from violating the restrictive covenants in the ISR agreement. To prevent any injury to a third party, the temporary injunction included an exception for auction listings that Harder currently had on the competing platform. However, any proceeds payable to Harder were to be deposited into a trust account until further order of the court.

The court set the amount of the undertaking required by § 25-1067 for entry of the requested temporary injunction at $300,000. With respect to a bond or undertaking, the record contains only a letter to the judge's bailiff stating that Big Iron enclosed a check in accordance with the court's order for remittance of bond.

During the interval between the order compelling arbitration and the resolution of the arbitration proceedings, each party sought relief from the district court concerning the temporary injunction. Harder moved to vacate or modify the temporary injunction. Big Iron filed an application for an order to show cause, alleging that Harder had willfully violated the injunction. Following a hearing, the court overruled these motions.

## Arbitration Proceeding

Harder filed an answer and counterclaim in the arbitration proceeding. With respect to the count of the complaint seeking injunctive relief, Harder stated, "This claim is not subject to arbitration." For its counterclaim, Harder alleged a cause of action for breach of contract. Harder asserted that

a glitch on Big Iron's platform was a substantial problem and that Harder terminated the ISR agreement primarily because of the glitch and Big Iron's failure or inability to resolve it. Harder alleged that after terminating the agreement, Big Iron refused to pay Harder approximately $22,000 in unpaid earned commissions.

In December 2024, the arbitration tribunal entered a final decision and order. The arbitrator determined that the restrictive covenants were unenforceable. With regard to damages, the arbitrator determined that the funds currently in trust should be paid to Harder. It stated: "The only other damages are the commissions that were made on sales that occurred while Harder was still an ISR, but were not paid because of the alleged breach of the restrictive covenants." The arbitrator calculated that amount to be $19,405.91.

Using language upon which the parties now focus, the arbitrator then stated:

> There are no other recoverable damages that could be awarded to Harder . . . based on the invalidation of the restrictive covenants. Measuring those damages would be too speculative. Obviously, the 1099s are not a basis for calculating damages because those numbers represent gross revenue not net revenue. In essence, Harder's status would be equivalent to starting a new business. Awarding damages for a startup business are very speculative and have generally not been allowed by the Nebraska Supreme Court.

The arbitrator determined that the parties should be responsible for their own share of the "fees and expenses of arbitration." It explained:

> While Harder . . . is a prevailing party on the enforceability of the restrictive covenants, there are aspects of the dispute in which Big Iron was a prevailing party, in particular any potential damages for the "glitch." I also think this ruling is consistent with Nebraska law where

parties generally are required to pay their own fees and expenses regardless of the outcome.

## RETURN TO DISTRICT COURT

In early December 2024, Harder filed two motions with the district court. One, an ex parte motion to vacate the temporary injunction, was based on the determination by the arbitrator that the restrictive covenants were invalid. The court immediately vacated the temporary injunction. The other motion sought to assess damages, costs, and fees for the wrongful injunction. In January 2025, Harder filed a motion and application to confirm the arbitral award.

Following a hearing on the two unresolved motions (damages and confirmation), the court entered an order confirming the arbitral award on March 10, 2025. Pursuant to the award, the court entered a judgment of $19,405.91 in favor of Harder.

Months later, on May 28, 2025, the court entered an order denying the motion to assess damages, costs, and fees for the wrongful injunction. The court stated that once an arbitral award is confirmed, "claims that were or could have been addressed in arbitration are barred by res judicata" and that "where a . . . confirmed arbitration award resolves all issues arising from the wrongful enforcement, that award may have preclusive effect on collateral bond claims—particularly when the arbitrator's decision includes findings that address or foreclose further damages."

The court observed that the arbitrator made findings as to damages, fees, and costs. The court stated that the arbitrator used "broad and preclusive" language clearly conveying that there were no other recoverable damages based on the invalidation of the restrictive covenants. The court reasoned that the arbitrator's language did not appear to limit the damages and that a plain reading of the language showed the damages included all forms of damages resulting from the invalid attempt to enforce the covenant.

The court addressed Harder's claim that the arbitrator went beyond the scope of the arbitration clause. The court stated:

> Even if [Harder is] correct that the Arbiter's finding was outside the scope of the ISR Agreement's arbitration clause or that damages were not squarely before the Arbiter, [Harder] should have sought to modify or vacate this portion of the Award, because the language of the Award demonstrates the Arbiter made findings related to those damages.

The court found that because the issues of damages, fees, costs, and expenses were all decided by the arbitrator in the award—which the court confirmed at Harder's request—"any additional assessment of damages and fees by the Court would be tantamount to a vacatur or modification of the Award contrary to the provisions of the Nebraska [Uniform Arbitration Act] and [the Federal Arbitration Act]." The court ordered the district court clerk's office to hold the $300,000 in bond proceeds until the appeal time had run or until further order of the court. It stated that if no appeal was timely taken, the district court clerk should distribute $19,405.91 and any accrued interest to Harder.

Harder appealed, and we moved the appeal to our docket.[2] We directed the parties to submit supplemental briefs regarding the potential application of one of our prior decisions.[3] They did so, and we have considered their submissions.

## ASSIGNMENTS OF ERROR

Harder assigns four errors that challenge the denial of its motion to assess damages, costs, and fees for a wrongful injunction. It alleges, consolidated, that the court erred in denying the motion, in failing to enter judgment on the motion for $587,104.68, and in "apparently determining" that as a result of the arbitrator's award, the motion was barred

---

[2] See Neb. Rev. Stat. § 24-1106(3) (Cum. Supp. 2024).

[3] See *Higgins v. Adelson*, 131 Neb. 820, 270 N.W. 502 (1936).

by claim or issue preclusion even though preclusion was not raised as an affirmative defense.

## STANDARD OF REVIEW

The parties disagree regarding our scope of review. According to Harder, the case began primarily for breach of contract, but Harder, noting the referral to arbitration and the temporary injunction, proposes an equity standard. Big Iron argues for a standard applicable to decisions vacating, modifying, or confirming an arbitral award.

As we discuss below, our precedent on damages upon an injunction undertaking had become somewhat muddled. If an independent action for damages upon an injunction undertaking had been asserted, we would have applied the standard for the bench trial of a law action.[4]

[1] But after the law issues (breach of contract and tortious interference) were referred to arbitration, all that remained was an action for injunction. An action for injunction sounds in equity.[5] After the arbitration concluded, Harder simultaneously sought dissolution of the injunction and damages upon the undertaking. Thus, it raised a law claim by motion within the equity proceeding.[6]

Although Harder later sought confirmation of the arbitral award, the award was confirmed and no appeal was taken within 30 days thereafter.[7] Thus, all that remained was the motion for damages, fees, and expenses on the injunction undertaking.

---

[4] See *id*. See, also, *Burbank v. Evnen, ante* p. 65, 32 N.W.3d 612 (2026) (stating standard).

[5] *Charter West Bank v. Riddle*, 314 Neb. 263, 989 N.W.2d 428 (2023).

[6] See *Schmid v. Simmons*, 311 Neb. 48, 970 N.W.2d 735 (2022) (reciting equitable cleanup doctrine).

[7] See Neb. Rev. Stat. § 25-2620(a)(3) (Reissue 2016) (appeal may be taken from order confirming award). See, also, *Kremer v. Rural Community Ins. Co.*, 280 Neb. 591, 788 N.W.2d 538 (2010).

[2-4] On appeal from an equity action, an appellate court decides factual questions de novo on the record.[8] The question of appellate jurisdiction is a question of law.[9] An appellate court reviews questions of law independently of the lower court's conclusion.[10]

## ANALYSIS

### JURISDICTION OF CLAIM FOR DAMAGES
### ON IMPROPER INJUNCTION

[5] Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it.[11] We do so now.

[6] Long ago, we stated that in the absence of any statute authorizing the court to assess damages in the injunction suit, upon the dissolution of the injunction, the court has no authority to do so; the party aggrieved must resort to an independent action upon the bond.[12] Then, as now, the "bond" was the "undertaking" required by § 25-1067—which must be "give[n]" before an injunction can become operative in order to "secure to the party enjoined the damages he [or she] may sustain, if it be finally decided that the injunction ought not to have been granted." A respected commentator opines consistently.[13] Litigants in another early case followed a similar course.[14]

This principle derived from ancient equity practice. According to the rules of the high court of chancery in England, a court of equity cannot, when it dissolves an injunction,

---

[8] *Goldie v. McNeil & Co. Builders, ante* p. 84, 32 N.W.3d 626 (2026).

[9] *WRK v. Wiegert*, 320 Neb. 822, 30 N.W.3d 832 (2026).

[10] *Martens v. BB's Childcare, ante* p. 335, 34 N.W.3d 393 (2026).

[11] *Id.*

[12] *Higgins v. Adelson, supra* note 3.

[13] John P. Lenich, Nebraska Civil Procedure § 18:18 at 877 (2026) ("separate action" required).

[14] See *Williams v. Hallgren*, 149 Neb. 621, 31 N.W.2d 737 (1948).

give judgment at the same time against the obligors, but merely orders dissolution, leaving the obligee to proceed at law against the sureties if he sustains damage by the delay occasioned by the injunction.[15] We applied this principle, stating that "'in the absence of positive legislation a court of equity has no power to afford a remedy upon the bond in the injunction suit.'"[16]

No such statutory change followed.

But our recent decisions, upon which Harder relies, departed from that principle. In 1997, applying a different statute,[17] which must be read together with yet another statute,[18] and without discussing our earlier case law, we reversed an injunction given below and entertained in this court a motion of the bond's principal for the bond's exoneration.[19] Although we denied the motion, we "remanded [the cause] to the district court for the determination of any damages that may have been sustained by [the party improperly enjoined] as a result of the injunction issued below."[20] In other words, in 1997, we relied upon a supersedeas bond statute, rather than § 25-1067, the injunction undertaking statute. The inapt statutory citation and unobserved precedent tainted our 1997 decision. This decision was the authority upon which we relied in 2007, when we reversed a permanent injunction and remanded the cause to the district court "with directions to determine in the first instance whether [the enjoined par-

---

[15] See *Bein et al. v. Heath*, 53 U.S. 168, 13 L. Ed. 939 (1851).

[16] *Higgins v. Adelson, supra* note 3, 131 Neb. at 829, 270 N.W. at 507 (quoting 2 James L. High & Shirley T. High, Treatise on the Law of Injunctions (4th ed. 1905)).

[17] See Neb. Rev. Stat. § 25-1079 (Reissue 2016) (establishing requirements for supersedeas bond authorized by preceding section).

[18] See Neb. Rev. Stat. § 25-1078 (Reissue 2016) (authorizing supersedeas bond to keep injunction effective after order dissolving or modifying).

[19] See *Robertson v. School Dist. No. 17*, 252 Neb. 103, 560 N.W.2d 469 (1997).

[20] *Id*. at 113, 560 N.W.2d at 477.

ties were] entitled to recover . . . damages from [the bond principal] under the injunction bond or otherwise,"[21] which, in turn, served as the basis for our 2009 decision that damages were not limited to the bond amount.[22]

Here, other irregularities occurred below. Section 25-1067, unlike the general appeal supersedeas statute,[23] does not authorize a cash deposit. Nonetheless, Big Iron deposited cash and the record does not show that Harder raised any objection. Nor does the record show any direct written undertaking by Big Iron, as specified in the statutory language.[24] Here also, Harder apparently raised no objection.

[7,8] But despite all that, neither party objected to proceeding against the cash deposit in the injunction suit. Nor does either party assert error in this regard on appeal. Of course, parties cannot confer subject matter jurisdiction upon a judicial tribunal by either acquiescence or consent, nor may subject matter jurisdiction be created by waiver, estoppel, consent, or conduct of the parties.[25] And if the court from which a party appeals lacked jurisdiction, then the appellate court acquires no jurisdiction.[26]

[9-11] The district court had subject matter jurisdiction. Subject matter jurisdiction refers to the power of a tribunal to hear and determine a case in the general class or category to which the proceedings in question belong and to deal with the general subject matter involved.[27] Both chancery

---

[21] *Koch v. Aupperle*, 274 Neb. 52, 69-70, 737 N.W.2d 869, 882 (2007).

[22] *Koch v. Aupperle*, 277 Neb. 560, 763 N.W.2d 415 (2009).

[23] See Neb. Rev. Stat. § 25-1916 (Reissue 2016) (must execute bond with surety, deposit U.S. Government bonds, or in lieu thereof make cash deposit).

[24] See § 25-1067. See, also, 3 Louis Lightner, Nebraska Forms Annotated § 3862 (1951).

[25] *Martens v. BB's Childcare, supra* note 10.

[26] *Id.*

[27] *Lopez v. Catholic Charities*, 315 Neb. 617, 998 N.W.2d 31 (2023).

and common law jurisdiction are conferred upon the district court by the Nebraska Constitution.[28] And the Legislature has provided the district court with "general, original and appellate jurisdiction in all matters, both civil and criminal, except where otherwise provided."[29] Whether Harder's damage claim arose in equity, under the common law, or by operation of § 25-1067, subject matter jurisdiction was vested in the district court.

[12,13] Two principles then apply. An appellate court will not consider an issue on appeal that was not presented to or passed upon by the trial court.[30] And in the absence of plain error, an appellate court considers only claimed errors which are both assigned and discussed.[31] It necessarily follows that by failing to raise the matter in the district court and by assigning no error thereto here, the parties have forfeited any error by the district court in entertaining equitable jurisdiction over a legal claim for damages for the improperly granted injunction. Because the district court had subject matter jurisdiction, we have jurisdiction of this appeal.

## PARTIES' ARGUMENTS

At its heart, the parties' legal dispute is simple. Harder contends that the damages it sought for wrongful injunction were "different" from the damages rejected by the arbitrator for invalidation of the restrictive covenants.[32] Big Iron disagrees, characterizing them as the "exact same damages."[33]

Harder further argues: The arbitrator had no authority over equitable claims and issues pertaining to temporary injunctions. Wrongful injunction damages were not raised or ripe at

---

[28] See *id.*

[29] Neb. Rev. Stat. § 24-302 (Reissue 2016).

[30] *Aguilar v. Valdez-Mendoza*, 318 Neb. 402, 16 N.W.3d 130 (2025).

[31] *In re Trust of Rosenberg*, 273 Neb. 59, 727 N.W.2d 430 (2007).

[32] Brief for appellant at 29.

[33] Brief for appellee at 24.

the time of the arbitration proceeding. Issue and claim preclusion did not apply. The causal mechanisms were different. Big Iron never raised preclusion as an affirmative defense.

Big Iron points to the breadth of the ISR agreement. It highlights Harder's failure to seek vacatur or modification of the arbitral award and its actions and statements in seeking confirmation of the award's entirety. Big Iron also focuses on the award's language regarding harm from enforcement of the invalid restrictive covenants. And it asserts that the arguments regarding issue or claim preclusion were not presented to the district court.

We disagree with Big Iron that arguments regarding issue or claim preclusion were not presented to or passed upon by the district court. Harder's reply brief in support of its motion to assess damages touched on the issue, and the district court's order stated that "claims that were or could have been addressed in arbitration are barred by res judicata." To the extent Harder complains about preclusion not being pled as an affirmative defense, we observe that it was Harder that elected to proceed on motions and without pleadings. We also note that our pleading rules contemplate supplemental pleadings "setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented."[34] We express no opinion regarding the applicability of that procedure except to note that it might have provided a mechanism for pleading or failing to plead issue or claim preclusion.

Before we turn to the matter not resolved by arbitration, we must consider the award's effect, including any preclusive effect, on the issues.

## EFFECT OF ARBITRATION

[14-16] Courts are obliged to enforce the parties' agreement to arbitrate according to its terms.[35] An arbitrator's

---

[34] Neb. Ct. R. Pldg. § 6-1115(d) (rev. 2025).

[35] *Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 130 S. Ct. 1758, 176 L. Ed. 2d 605 (2010).

power derives from the parties' agreement.[36] And as the U.S. Supreme Court recognized, after an arbitral award has issued, a court having jurisdiction may confirm, vacate, or modify such an award under 9 U.S.C. § 9, § 10, or § 11 (2018) of the Federal Arbitration Act.[37]

The ISR agreement provided for the resolution of all claims between the parties, including future claims. The agreement stated that arbitration did not cover claims for restraining orders or injunctions or any relief by Big Iron for "claims related to claims" under certain paragraphs, including paragraph 11 on restrictive covenants. The agreement gave the arbitrator "exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability[,] or formation of this Agreement, including but not limited to any claim that all or any part of this Agreement is void or voidable."

In a section of the arbitral award on damages, the arbitrator made two findings; but only the second one matters here. The first determined the amount of commissions to which Harder was entitled on sales that Big Iron claimed were in violation of the restrictive covenants. That amount, included in the district court's judgment, is not disputed on appeal.

The second finding stated that "[t]here are no other recoverable damages that could be awarded to [Harder] based on the invalidation of the restrictive covenants." The arbitrator characterized such damages as "speculative." He explained that "1099s" were not a proper basis for calculating damages and that "Harder's status would be equivalent to starting a new business."

In seeking damages for the wrongful injunction in district court, Harder explained its calculation for its request of over $500,000. It based its calculation on its 1099 tax form for the

---

[36] See *City of Omaha v. Professional Firefighters Assn.*, 309 Neb. 918, 963 N.W.2d 1 (2021).

[37] See *Jules v. Andre Balazs Properties*, ___ U.S. ___, 146 S. Ct. 1209, 224 L. Ed. 2d 708 (2026).

year 2023 (divided by 10, for the 10 months of auction sales that year), plus the $19,405.91 that the arbitrator determined should have been paid to Harder (which Harder also divided by 10). Then it added those two monthly amounts and multiplied that number by 12 months.

We are not persuaded that, in this regard, the arbitrator's determination of damages "based on the invalidation of the restrictive covenants" somehow differs from damages for enforcement of the restrictive covenants by means of the temporary injunction.

To try to avoid this problem, Harder relies on exclusionary language in paragraph 16. It quotes the language excluding "claims by [Big Iron] or by [Harder] for temporary or permanent restraining orders or preliminary or permanent injunctions ('equitable relief') in cases in which such equitable relief would be otherwise authorized by law." Essentially, Harder maintains that a damage claim for an improper injunction is part of a claim for restraining orders or injunctions.

Beyond the strained nature of Harder's argument, at least two flaws doom it. First, as our discussion of jurisdiction demonstrates, an action on an injunction undertaking is a separate claim at law and not part of the proceeding in equity for injunction. But perhaps more important, the argument conflicts with the remainder of the agreement's sentence, which excludes only "any relief by [Big Iron] for claims related to claims under paragraph[] 11." It does *not exclude any relief by Harder.* Thus, Harder's claim for relief relating to damages from an invalid restrictive covenant was not excluded— stated affirmatively, the broad agreement to arbitrate applied to Harder's claim for damages.

But even if the arbitrator somehow exceeded his authority, Harder forfeited that argument. At least two avenues to challenge the award were available.

First, under 9 U.S.C. § 10(a)(4), Harder could have sought an order from the district court "vacating the award . . . where

the arbitrator[] exceeded [his] powers." A party seeking relief under § 10(a)(4) bears a heavy burden; it is not enough to show that the arbitrator committed an error.[38] The sole question for a court reviewing an arbitral award is whether the arbitrator, even arguably, interpreted the parties' contract, not whether the arbitrator got its meaning right or wrong.[39] Harder did not pursue this course.

Nor did Harder avail itself of the other possibility—to seek modification or correction under 9 U.S.C. § 11(b), applicable where "the arbitrator[ has] awarded upon a matter not submitted."

Instead, Harder sought confirmation of the arbitral award under 9 U.S.C. § 9. The district court granted confirmation and entered judgment against Big Iron for the total sum awarded to Harder by the arbitrator. Under 9 U.S.C. § 13 (2018), "The judgment so entered shall have the same force and effect, in all respects, as . . . a judgment in an action; and it may be enforced as if it had been rendered in an action in the court in which it is entered."

[17] Upon Harder's motion to confirm the award (and in the absence of any request to vacate, modify, or correct the award), the district court had no option but to enter judgment confirming the arbitral award. That judgment then became the law of the case. Unlike the doctrines of claim preclusion and issue preclusion, which involve successive suits, the law-of-the-case doctrine involves successive stages of one continuing lawsuit.[40] When it applies, the law-of-the-case doctrine operates to preclude reconsideration of substantially similar, if not identical, issues at successive stages of the same suit or prosecution.[41]

---

[38] See *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 133 S. Ct. 2064, 186 L. Ed. 2d 113 (2013).

[39] See *id*.

[40] *In re Estate of Weeder*, 318 Neb. 393, 16 N.W.3d 137 (2025).

[41] *Id*.

Although we agree with Harder that the arbitrator did not make any express determination about Harder's entitlement to damages for a wrongfully issued injunction, we nonetheless conclude that the findings the arbitrator did make about Harder's entitlement to damages based on the invalidation of the restrictive covenants precluded further litigation of wrongful injunction damages. As noted above, the law-of-the-case doctrine precludes reconsideration of not just identical issues that are decided at an earlier stage of the proceedings, but also substantially similar issues.[42] Under these facts, we find that Harder's entitlement to damages for a wrongfully issued injunction is substantially similar to its entitlement to damages based on the invalidation of the restrictive covenants. Harder sought to prove both types of damages through 1099 tax forms, and on appeal, Harder offers no explanation of how its claim for wrongful injunction damages would be substantively different than its claim for damages based on the invalidation of the restrictive covenants.

To that extent, we agree with Big Iron regarding the scope of the award and the resulting judgment. The arbitrator determined that there were "no other recoverable damages that could be awarded to [Harder] based on the invalidation of the restrictive covenants." The damages claimed by Harder regarding enforcement of the restrictive covenants foreclosed that aspect of Harder's claim for damages for an improper injunction.

[18] The purpose of arbitration is the quick resolution of disputes and the avoidance of the expense and delay associated with litigation. In serving that purpose, a court gives strong deference to the arbitrator because when parties agree to arbitration, they agree to accept whatever reasonable uncertainties might arise from the process.[43]

---

[42] *Id.* See, also, *State v. Lavalleur*, 298 Neb. 237, 242, 903 N.W.2d 464, 468 (2017) (under law-of-the-case doctrine, holdings of appellate court settle "all matters ruled upon, either expressly or by necessary implication").

[43] *State v. Nebraska Assn. of Pub. Employees*, 313 Neb. 259, 984 N.W.2d 103 (2023).

But we do not agree with Big Iron that *only* "the exact same damages"[44] were at issue upon dissolution of the injunction. Next, we explain.

### Attorney Fees and Expenses in Dissolving Injunction

Pursuant to § 25-1067, the undertaking for an injunction is required "to secure to the party enjoined the damages he [or she] may sustain, if it be finally decided that the injunction ought not to have been granted."

[19] At least as early as 1900, we stated, "Damages for the wrongful obtaining and issuance of an injunction or restraining order are confined to just and adequate compensation for the actual loss which is the natural and proximate result of the restraint imposed."[45] As we explained above, the damages in the case before us for an improper injunction were, for the most part, the same as the damages for enforcement of the invalid restrictive covenant. Those damages were foreclosed by the arbitral award.

But the award did not address the fees and expenses for resisting or obtaining a dissolution of the injunction. Rather, the award imposed upon each party its "share of the fees and expenses *of arbitration*." (Emphasis supplied.)

[20-22] We have long interpreted the injunction undertaking statute to allow attorney fees and expenses for wrongful injunctions, employing three related principles. The necessary and reasonable expenses for attorney fees expended or incurred in resisting or procuring the dissolution of an order of injunction wrongfully issued are recoverable as an element of damages, but, when the right to an injunction is not the main issue of the case, such damages are limited to the expenses incurred in securing the dissolution of the injunction, as distinguished from the expenses incurred in the trial of the principal

---

[44] Brief for appellee at 24.

[45] *Trester v. Pike*, 60 Neb. 510, 514, 83 N.W. 676, 677 (1900). See, also, *Darling v. McBride*, 86 Neb. 481, 125 N.W. 1088 (1910).

issues involved.[46] It is only where a trial of the principal issues involved is necessary to dispose of an injunction that attorney fees for the trial of the case are proper to be allowed as damages caused by an injunction wrongfully issued.[47] A recovery of attorney fees for the trial of a case cannot be allowed as an element of damages for an injunction wrongfully obtained, if the injunction proceedings be only auxiliary to the main case.[48] Much later, we again recited these principles.[49] And one of the decisions cited by Harder applies a substantially distilled version of the same principles.[50]

Harder presented evidence of the attorney fees and expenses incurred from the beginning of representation through December 6, 2024. The fees and expenses sought totaled $58,763.88.

At this point, the related arbitration proceeding becomes important. Here, the "main case" was the arbitration proceeding to determine the validity and enforceability of the restrictive covenants and damages caused by the invalid covenants. The injunction proceeding in the district court was "auxiliary."

Under these well-settled principles, the fees and expenses for resisting the issuance of the temporary injunction and obtaining, by respective motions, dissolution of the injunction and confirmation of the arbitral award were proper elements of the damages for a wrongful injunction. These fees and expenses were not foreclosed by the arbitration proceeding. They should have been awarded upon disposition of Harder's motion for damages, fees, and expenses.

Because the court below retained the case in equity, we apply the equity standard of review. Accordingly, we modify

---

[46] See *Trester v. Pike, supra* note 45.

[47] See *id.*

[48] See *id.*

[49] See *Williams v. Hallgren, supra* note 14.

[50] See *Koch v. Aupperle, supra* note 22 (citing *Williams v. Hallgren, supra* note 14).

the judgment to include as additional damages the attorney fees and expenses in the amount of $11,000. Because of the combined summary of fees and expenses in the main case and the auxiliary injunction proceeding, we disclaim mathematical precision. We consider the amount to be just and equitable under the circumstances.

## CONCLUSION

For the reasons explained above, we conclude the following:

- Because Big Iron did not seek a supersedeas bond to maintain the injunction in effect after the district court dissolved it, § 25-1067, rather than § 25-1079, controlled Harder's claim for damages.
- Although § 25-1067 did not authorize assessment of damages in the equity action, the district court had subject matter jurisdiction despite the parties having elected not to pursue or insist upon an independent action on Big Iron's undertaking.
- Under the facts of this case, the portion of Harder's claim for damages for an improperly granted injunction relating to enforcement of the restrictive covenant invalidated in arbitration is controlled by the arbitral decision.
- The portion of Harder's claim for damages for an improperly granted injunction relating to resisting the issuance of the temporary injunction and obtaining, by respective motions, dissolution of the injunction and confirmation of the arbitral award were proper elements of the damages not controlled by the arbitral decision.

We modify the judgment to increase the recoverable damages (in addition to the amount allowed by the district court, flowing from the confirmation of the arbitral award) by $11,000 and to increase by the same amount, with interest thereon from May 28, 2025 (the date of filing of the district court's judgment), the portion of the cash deposit to be paid by the court clerk to Harder. As so modified, we affirm the judgment.

AFFIRMED AS MODIFIED.